<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DAVID KIRKLAND, | : |
| Petitioner, | : Civil Action No. 16-7831 (KSH) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

<u>**HAYDEN, District Judge:**</u>

Petitioner David Kirkland, confined at FPC Schuylkill in Minersville, Pennsylvania, has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, challenging on grounds of ineffective assistance of counsel the judgment and sentence imposed by this Court in *United States v. Kirkland*, No. 06-cr-0911 ("Crim. Dkt."), ECF No. 189 (D.N.J. entered Oct. 5, 2009), after a jury convicted him of transporting stolen goods across state lines. For the reasons stated below, the Court denies the motion.

**I.     FACTUAL BACKGROUND**

As summarized succinctly by the Third Circuit on direct appeal:

> While in prison for a string of burglaries, Kirkland and Terrance Lawton conspired to commit future burglaries. Once released from prison, Kirkland and Lawton carried out their jointly devised scheme. Along with additional coconspirators, they burglarized affluent homes in New Jersey and transported the stolen goods to New York City for purchase by a fence. Lawton was the government's key witness at trial.

*United States v. Kirkland*, 612 F. App'x 133, 135 (3d Cir. 2015).

Kirkland went to trial twice. The first time was in June 2008, on a multi-count, multi-defendant indictment that resulted in pleas after a few days by his two co-defendants. Kirkland, who was charged in the indictment with one count of conspiracy and three substantive counts, also entered a guilty plea to one substantive count of transporting stolen goods across state lines, exposing him to a sentence of 120 months. *See* Plea Agreement, Crim. Dkt., ECF No. 70. Not long after that, Kirkland's attorney filed a motion to withdraw, citing disruptive and threatening behavior on Kirkland's part. Crim. Dkt., ECF No. 81. Kirkland was appointed new counsel, who moved to vacate Kirkland's plea due to the lack of a factual basis for the substantive count of burglary that Kirkland pleaded guilty to.[1] Crim. Dkt., ECF No. 90. The Court granted the motion after holding a hearing. Crim. Dkt., ECF No. 92.

At that point, Kirkland was presented with a plea offer – which mirrored the original plea agreement – whereby he would agree to plead guilty to one substantive count by a date certain. He was advised of the penalties he faced if he was convicted after a trial on the indictment. *See* Crim. Dkt., ECF No. 99. Kirkland turned down the plea offer. Thereafter, the government filed a four-count superseding indictment, charging Kirkland with conspiracy to transport stolen goods across state lines, and three substantive counts of transportation of stolen goods across state lines. Crim. Dkt., ECF No. 111. A second jury was empaneled, trial took place, and the jury acquitted Kirkland on one of the substantive counts, but found him guilty on the others. *See* Jury Verdict,

---

[1] In the indictment, the conspiracy count against all the co-defendants listed numerous overt acts relating to a spate of residential burglaries, and a variety of substantive counts describing specific burglaries. Kirkland was named in three substantive counts and pleaded to one of them. The defense argument on the motion to withdraw plea was that factual basis questions posed to Kirkland described conduct that, on counsel's close scrutiny, did not apply to what happened during the particular burglary that Kirkland admitted to. The Court agreed and entered an order vacating Kirkland's plea. Crim. Dkt., ECF No. 92.

2

Crim. Dkt., ECF No. 151. The Court imposed a 216-month custodial sentence. Crim. Dkt., ECF No. 189.

## II.     STANDARD OF REVIEW

A prisoner in federal custody may move the sentencing court "to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, because a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

## III.     DISCUSSION

Kirkland raises eight claims in the motion, all ineffective assistance of counsel claims. Claims I and II, however, essentially raise the same claim. The seven distinct claims Kirkland raises are: (1) trial counsel erroneously advised him that his maximum sentencing exposure was 120 months, which affected his plea decisions; (2) trial counsel failed to object to a jury instruction regarding the definition of "market value"; (3) trial counsel failed to object to a jury instruction that changed the alleged start date of the conspiracy; (4) trial counsel failed to raise a statute of

3

limitations defense prior to trial; (5) trial counsel failed to object to the method used to calculate restitution; (6) trial counsel failed to object to improper comments by the government during summation; and (7) appellate counsel failed to raise meritorious arguments on direct appeal.

### A. Standard for Ineffective Assistance of Counsel Claims

The sixth amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Under the familiar standard, this means the right to the effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 687-90. The court must determine whether, in light of all the circumstances, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). Second, the defendant must show that he suffered prejudice due to the alleged ineffective assistance. However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083.

### B. Sentencing Exposure

In claims I and II, Kirkland asserts he was erroneously advised by trial counsel that his maximum sentencing exposure would be only 120 months, which materially affected his plea

4

decisions. It is unclear from his allegations which trial counsel these claims are made against. To the extent the claims are made against his first attorney who represented him when he entered a guilty plea, that attorney was not ineffective—Kirkland's maximum sentencing exposure for the count to which he pled guilty was indeed 120 months, *see* Plea Agreement 2, so the advice Kirkland received was not erroneous. To the extent Kirkland asserts he withdrew his plea due to error in the advice provided by the attorney with whom he went to trial after the Court found irretrievable breakdown in his relationship with his plea attorney, Kirkland suffered no prejudice because the original plea offer was still available.

The only plausible claim under the facts of this case is that alleged erroneous advice by his second attorney led Kirkland to reject the reinstated plea offer and go to trial instead. However, the factual allegations are insufficient to establish this claim. If the second attorney had advised Kirkland that the maximum sentencing exposure under the plea offer was 120 months, that advice was correct—after all, it was the same plea offer that Kirkland originally accepted under the first attorney's advice. Instead, Kirkland cryptically alleges that "[i]f trial counsel properly advised the Petitioner, he would have entered into an 'open plea' and received a sentence substantially below that which he is presently serving 216 months." ECF No. 1-1 at 6. This allegation makes little sense, because the record shows that the government steadfastly refused to make any other plea offer,[2] so the only "open plea" Kirkland could have made was to plead guilty to all counts in the original four-count indictment, not the one count offered as part of the plea agreement. *See* Crim. Dkt., ECF No. 99 ("The defendant was advised that the United States will neither negotiate nor modify the [original] plea agreement."). An open plea to the original indictment would have

---

[2] The order entered after Kirkland's plea was vacated reflected that Kirkland was advised of the potential penalties if he was convicted of all counts in the indictment.

subjected Kirkland to three substantive crimes as opposed to the two he was eventually found guilty of, putting him in a worse scenario than the 216 months he is currently serving.[3] *See Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) ("[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that . . . the [] terms would have been less severe than under the judgment and sentence that in fact were imposed.").

Kirkland also appears to allege that the 120-month advice was given as his maximum sentencing exposure after a trial and conviction. This belies the record. Indeed, because the superseding indictment was not filed until after the plea offer had been withdrawn, his attorney could not have been certain what charges the government would eventually bring against Kirkland in a new trial, let alone what the maximum sentencing exposure would be under the new indictment. Moreover, irrespective of the subsequent superseding indictment, Kirkland himself was well aware that he was likely to be charged on more than one count in the new trial, as the initial four-count indictment was still pending after he withdrew his guilty plea.

Instead, the record suggests that Kirkland may have been hoping the government would accept a guilty plea on just one count, as the original plea offer provided, with the difference that there would be no sentencing stipulations. As indicated, the government refused. The fact his second attorney was unable to procure a plea agreement that satisfied Kirkland is not a valid basis for an ineffective assistance of counsel claim. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n [ineffective assistance of counsel] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."); *Kim v. United States*, No. 05-3407, 2006 WL 981173, at *3 (D.N.J. Apr. 4, 2006)

---

[3] Kirkland was sentenced to 108 months for each of the two substantive counts, to be served consecutively, resulting in the 216-month sentence. The sentence for the conspiracy conviction, a 60-month sentence, was made concurrent to the substantive counts. Crim. Dkt., ECF No. 189.

6

("[T]hat [he] now appears unhappy with the result does nothing to change the fact that there is not the slightest indication that petitioner received ineffective assistance of counsel."). As such, claims I and II are denied.

### C. "Market Value"

In claim III, Kirkland alleges that trial counsel was ineffective for failing to object to the jury instruction given at trial regarding the definition of "market value." The underlying issue, however, has already been litigated on direct appeal, with the Third Circuit finding that record evidence supported the jury verdict regarding the required market value of the stolen goods. *See Kirkland*, 612 F. App'x at 135-36. "It is well settled that a petitioner generally may not relitigate issues that were decided adversely to him on direct appeal by means of a Section 2255 petition." *Sonneberg v. United States*, No. 01-2067, 2003 WL 1798982 (3d Cir. Apr. 4, 2003) (citing *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993)). Indeed, if the jury's findings on market value were supported by evidence despite the alleged improper jury instruction, it is unclear what a change in jury instruction would have accomplished—evidence would still have led to the same result. To the extent Kirkland challenges the substantive standard used at trial to define market value, the Third Circuit obviously found it to be proper. Thus, he suffered no prejudice from the alleged ineffective assistance of counsel, because the outcome of the trial would not have been different. Therefore, claim III is denied.

### D. Start Date of the Conspiracy

In claim IV, Kirkland alleges that trial counsel failed to object to a jury instruction regarding the start date of the conspiracy. Specifically, he alleges while the indictment stated that the conspiracy started in 1999, the instruction at issue stated that it started in 1996.

It is not clear what jury instruction Kirkland refers to, because none of his factual allegations points to a jury instruction that made use of the 1996 date. Instead, he appears to argue that the prosecution impermissibly made references to the 1996 date. In response, the government states, and Kirkland does not dispute, that the 1996 date related to evidence submitted at trial—which the Court allowed after an evidentiary hearing, *see* Crim. Dkt., ECF No. 216—about conversations Kirkland and Lawton had while in prison, before the conspiracy, regarding their past burglaries and how they could do them better in the future. This is probative evidence of the conspiracy, and Kirkland has not shown the government used it to prove that the conspiracy actually began in 1996. Indeed, none of the overt acts alleged in the superseding indictment happened before 1999.

Furthermore, Kirkland has not established prejudice by showing that had counsel made the alleged objection, the outcome of the trial would have been different. Given the overwhelming evidence against him, it is exceedingly unlikely that the jury would have acquitted him of the conspiracy charge, even if it was made explicitly clear to the jury that the 1996 date was not the start date of the conspiracy. Accordingly, claim IV is denied.[4]

### E. Statute of Limitations

In claim V, Kirkland alleges that trial counsel was ineffective for not raising a statute of limitations defense at trial. Essentially, he claims that because the two substantive crimes for which he was found guilty occurred on December 9, 2001, and February 9, 2002, and the

---

[4] To the extent Kirkland asserts that counsel failed to object to the superseding indictment, which included more criminal conduct than the original indictment, the addition of more charges is usually the very purpose of a superseding indictment—a consequence of rejecting the plea deal. *See United States v. Sanders*, 208 F. App'x 160, 163 (3d Cir. 2006) ("[A] prosecutor does not violate due process when he threatens serious charges to induce a guilty plea[.]").

superseding indictment he was tried on was filed on January 27, 2009, the applicable statute of limitations prohibited the government from indicting him for those crimes.[5]

Kirkland's claim is meritless. "When 'the government has filed a superseding indictment, the day on which the original indictment was filed controls for statute of limitation purposes, provided that . . . the superseding indictment does not materially broaden or substantially amend the charges[.]'" *United States v. Johnson*, 682 F. App'x 118, 121 (3d Cir. 2017) (quoting *United States v. Oliva*, 46 F.3d 320, 324 (3d Cir. 1995)). Here, the operative statute of limitations is provided by 18 U.S.C. § 3282(a), which is five years. The substantive counts in the superseding indictment were identical to the corresponding counts asserted in the original indictment, which was filed on November 9, 2006. Therefore, the filing date of the original indictment controls, and the two substantive crimes occurred within five years of the filing date of the original indictment. Counsel was not ineffective for failing to raise a statute of limitations defense prior to trial because the defense was unavailable to Kirkland. Thus, claim V is denied.

### F. Restitution

In claim VI, Kirkland alleges that counsel was ineffective by failing to object to the method of calculation for restitution. To the extent this claim challenges the restitution order itself, "[r]estitution orders and fines . . . are not sufficient restraints on the liberty of a criminal offender to constitute 'custody.'" *Kolasinac v. United States*, No. 13-1397, 2016 WL 1382145, at *4 (D.N.J. Apr. 7, 2016) (citing *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003), *United States*

---

[5] Kirkland makes the same argument with regard to the conspiracy count, but the indictment stated that the conspiracy lasted until 2006. The statute of limitations for a conspiracy crime runs from the last act performed in furtherance of the conspiracy. *See United States v. Bornman*, 559 F.3d 150, 153 (3d Cir. 2009). Insofar as the indictment alleged overt acts as late as November 14, 2006, Crim. Dkt., ECF No. 111 at 5, the conspiracy charge was clearly within the statute of limitations even considering the filing date of the superseding indictment.

*v. Ross*, 801 F.3d 374, 380-81 (3d Cir. 2015)). "[B]ecause [habeas relief] is available only to those seeking release from custody, [it] is not available to those . . . seeking to challenge fines or restitution orders." *Id.*[6]

To the extent Kirkland claims that the amount of restitution affected the calculation of his sentence, he asserts that "the government seeks to by-pass the grand jury by adding 58 homes identified by the [PSR]," ECF No. 1-1 at 16, and that counsel was ineffective for not challenging this error. However, as with the "market value" claim, the Third Circuit already ruled on this issue, holding that "this claim is meritless because the court did not impose a mandatory minimum." *Kirkland*, 612 F. App'x at 139 n.12 (citing *United States v. Freeman*, 763 F.3d 322, 335-36 (3d Cir. 2014)).[7] It also found that "the court did not abuse its discretion by applying an enhancement for amount of loss and number of victims." *Id.* at 139. Kirkland further asserts that much of the loss amount was attributed to individuals who had not been shown to be "victims" under the Mandatory Restitution Act of 1996, but he does not explain why the act, which deals exclusively with restitution, had any relevance to the calculation of loss amount under the Sentencing Guidelines. As with the "market value" claim, because the loss amount found by the Court has already been upheld, Kirkland fails to establish the prejudice necessary for his ineffective assistance of counsel claim. As such, claim VI is denied.

---

[6] Kirkland's claim certainly appears to be challenging the restitution order itself, as it is purportedly based on the Mandatory Restitution Act of 1996, which strictly deals with restitution orders only. *See* 18 U.S.C. § 3663A. Nevertheless, out of the abundance of caution, the Court construes the claim as also raising a challenge to the loss amount calculation as it related to the imposed sentence.

[7] *Freeman* held that "[w]hile the Supreme Court made clear that any fact that increases a defendant's statutory minimum sentence must be found by a jury beyond a reasonable doubt, this rule does not foreclose a district court's ability to engage in some judicial factfinding." 763 F.3d at 335.

10

### G. Improper Comments by Prosecution

In claim VII, Kirkland alleges that counsel was ineffective by failing to object to comments made by the prosecutors that amounted to witness vouching. In particular, he highlights two comments made by two separate prosecutors, first during the government's summation and later the rebuttal:

> "Now, you may not like Terence Lawton or Corey Emanuel, but the fact they are not likeable does not [mean] tha[t] they lied here on the stand."

> "Ladies and gentleman, common sense tells you what Terrence Lawton told you is what actually happened. If he was eager to please and eager to give the investigators and the prosecutors what they wanted to hear, he would have told you that. But he didn't. And I submit to you that he was being truthful when he testified about what he did. I submit to you most likely [], he obviously made a mistake. Because it would make no sense for him to be lying about that. Especially when he knows that something so easy and verifiable, he knows David Kirkland. He visited David Kirkland at the half-way house."[8]

ECF No. 15 at 45-46.[9]

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such

---

[8] Although Kirkland appears to suggest the second statement was a contiguous statement from the rebuttal, the Court has reviewed the transcript, and it is instead a conglomeration of statements made by the prosecutor during rebuttal, which explains its apparent fragmentation.

[9] Kirkland also alleges that the government used false testimony at trial. That issue was decided by the Third Circuit on direct appeal, where it found that "Kirkland must show, among other things, that the false statement went uncorrected and that there is a reasonable likelihood it could have affected the verdict. He cannot show either. In both cases, the government corrected the misstatement at trial. Moreover, the other evidence of Kirkland's guilt was overwhelming. Accordingly, Kirkland cannot establish a due process violation based on these misstatements." *Kirkland*, 612 F. App'x at 138 (internal citation omitted).

> comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985). However, when a prosecutor's statement "contained no suggestion that he was relying on information outside the evidence presented at trial," and "when viewed in context . . . cannot be read as implying that the prosecutor had access to evidence outside the record," then the prosecutor has not improperly vouched for a witness. *Id.* at 19.

To state a claim of improper vouching, Kirkland must establish that "(1) the prosecutor must assure the jury that testimony of a government witness is credible; (2) this assurance must be based on either the prosecutor's personal knowledge or other information not contained in the record." *United States v. Brown*, 54 F. App'x 342, 345 (3d Cir. 2002) (quoting *United States v. Saada*, 212 F.3d 210, 225 (3d Cir. 2000)). Nothing in the comments he points to suggests that the prosecutors relied on information and evidence that was outside of the record. It was known to the jury that Lawton was Kirkland's co-conspirator. It was known to the jury that Lawton cooperated with the government by testifying against Kirkland in order to receive a plea deal. The prosecutors' comments were made in anticipation that the jury may have disliked Lawton and questioned Lawton's credibility. Those were not comments made by relying on information or evidence outside of the record. While Kirkland is correct that the prosecutors did not know whether any juror actually disliked Lawton or did not believe him, their comments were nevertheless reasonable because the facts and circumstances supported such an inference, and they were entitled to address those potential jury concerns. Kirkland was certainly free to rebut those comments during his summation, but counsel was not ineffective for not *objecting* to those

12

comments. They were reasonable comments supported by the record evidence. *See United States v. Felix*, 314 F. App'x 430, 432 (3d Cir. 2008) ("[T]he prosecutor used an appropriate argument to suggest that [the witness] was telling the truth. It was also proper for the government to argue that a cooperating witness's plea agreement provides an incentive for truthful testimony, so long as the cooperating witness has so testified or the record otherwise supports the argument." (internal citation omitted)). That Kirkland disagreed with them did not render them improper. Claim VII is denied.

### H. Appellate Counsel

In claim VIII, Kirkland argues that appellate counsel was ineffective because she failed to raise two arguments regarding (1) the definition of "market value"; and (2) a *Brady* violation. The Court has already rejected Kirkland's "market value" claim, *see supra*, and also rejected his *Brady* claim in a previous memorandum order as meritless. *See* ECF No. 20 at 2-3. Appellate counsel cannot be deemed ineffective for failing to raise meritless claims. *See Moore v. Mitchell*, 708 F. 3d 760, 776 (6th Cir. 2013); *Barney v. D'Ilio*, No. 15-0057, 2018 WL 2018054, at * 23 (D.N.J. May 1, 2018). Accordingly, claim VIII is denied.[10]

### I. Certificate of Appealability

An appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255, unless a certificate of appealability issues upon a finding that "the applicant has made a substantial

---

[10] Kirkland also raises other arguments regarding appellate counsel's alleged deficiencies in his brief, filed almost eight months after the initial § 2255 motion. *See* ECF No. 15. These arguments were not raised in the pleading, and therefore the Court is not obligated to "to accept assertions in a brief without support in the pleadings. After all, a brief is not a pleading." *Chavarriaga v. N.J. Dept' of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (citation omitted). To the extent they were attempts at raising new claims, Kirkland is time-barred from doing so. *See Mayle v. Felix*, 545 U.S. 644, 648 (2005); *Hodges v. United States*, 554 F.3d 372, 377 (3d Cir. 2009) ("*Mayle* forecloses the relation back of a new, untimely claim when it is 'supported by facts that differ in both time and type from those the original pleading set forth.'" (quoting *Mayle*, 545 U.S at 650)).

13

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Kirkland has failed to make a substantial showing of the denial of a constitutional right, and the Court declines to issue a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.   CONCLUSION

For the reasons set forth above, Kirkland's motion is DENIED and the Court denies a certificate of appealability.

Dated:  August 30, 2018

s/ Katharine S. Hayden
**Katharine S. Hayden, U.S.D.J.**